

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

2022 FEB 11 PM 12: 46
CLERK
U.S. DISTRICT COURT

NANCY CALCHI, individually and on behalf of all others similarly situated,

*Plaintiff,*

vs.

TOPCO ASSOCIATES, LLC

*Defendant.*

Case No. 1:22-cv-00747

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

**Table of Contents**

I. Introduction. 1

II. Parties. 2

III. Jurisdiction and Venue. 2

IV. Facts. 3

A. Defendant makes, markets, and sells TopCare products prominently labeled "Non-Drowsy." 3

B. The Non-Drowsy TopCare Products cause drowsiness. 5

C. Defendant's Non-Drowsy representations misled reasonable consumers. 6

D. Plaintiff was misled by Defendant's misrepresentations. 10

E. Class Action Allegations. 11

V. Causes of Action. 13

VI. Jury Demand. 23

VII. Prayer for Relief. 23

## I. Introduction.

1. Defendant makes, sells, and markets "TopCare" over-the-counter cough, cold and flu medicine (the "Non-Drowsy TopCare Products" or "Products"), including generic TopCare versions of brands like DayQuil and Robitussin.[1] Like the branded versions, these medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM"), an ingredient that causes drowsiness.

2. Defendant's Non-Drowsy TopCare Products state prominently on the front of their label that they are "Non-Drowsy" products (juxtaposed against Defendant's night time versions that have no such claim and that are known to cause drowsiness). By prominently labeling these products as "Non-Drowsy" Defendant led Plaintiff and other consumers to believe that the Non-Drowsy TopCare Products do not cause drowsiness, that drowsiness is not a side effect of those products. Defendant also led Plaintiff and other consumers to believe that those products are for use during the day, and can be safely and satisfactorily consumed during waking hours, at work, and while driving and operating machinery.

3. But the truth is that products containing DXM—and thus the Non-Drowsy TopCare Products—do cause drowsiness, and that drowsiness is a known side effect of DXM (a fact not known by the average consumer). In reality, the Products cause drowsiness, which in effect destroys the primary reason for purchasing the Products in the first place – for use when consumers do *not* want to be drowsy.

4. In this way, Defendant misled Plaintiff and other consumers about the effects of the Non-Drowsy TopCare Products. This was a material misrepresentation that Plaintiff—and other reasonable consumers—relied on when deciding to buy the products. Had Defendant been

[1] The Non-Drowsy TopCare Products include all TopCare products sold by Defendant that are labeled "Non-Drowsy" and that contain Dextromethorphan Hydrobromide.

truthful, Plaintiff and other consumers would not have purchased the products or would have paid less for them.

5. Plaintiff brings this case for herself and for millions of other consumers who purchased Non-Drowsy TopCare Products.

## II. Parties.

6. Plaintiff Nancy Calchi is a citizen of New York (domiciled in Bloomingburg). The proposed class (identified below) includes citizens of every state within the United States.

7. Defendant TopCo Associates, LLC is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in Elk Grove, Illinois, and has been doing business in the State of Illinois during all relevant times. According to its website, TopCo LLC has "nearly 45 member-owners" that are supermarkets, wholesalers, and distributors, including members based in Michigan, New York, California, Texas, and other states. [2] Directly and through its agents, TopCo Associates, LLC has substantial contacts with, and receives substantial benefits and income from, the State of Illinois.

## III. Jurisdiction and Venue.

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

9. The Court has personal jurisdiction over Defendant because it maintains its principal place of business in Illinois.

[2] https://www.topco.com/Members (map of member stores)

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this judicial district and, therefore, a substantial part of the decisions that led to the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## IV. Facts.

### A. Defendant makes, markets, and sells TopCare products prominently labeled "Non-Drowsy."

1. TopCo manufactures, distributes, markets, and sells the Non-Drowsy TopCare Products.

2. The front label of each Non-Drowsy TopCare Product prominently states that the product is "Non-Drowsy." For example:

**TopCare Tussin DM Max Cough & Chest Congestion**[3]




[3] https://shop.shoprite.com/store/20c6704/product/00036800771321

**TopCare Daytime Cold & Flu Relief Softgels** [4]




3. These representations are materially the same across all Non-Drowsy TopCare Products.

4. The Non-Drowsy TopCare Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect of the Non-Drowsy TopCare Products.

5. Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness. That is, a reasonable consumer would believe that drowsiness is *not* a side effect of the product.

[4] https://www.hy-vee.com/aisles-online/p/2454660/TopCare-Day-Time-Cold-And-Flu-Relief-Softgels

6. Indeed, Defendant labeled the products this way because it intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B. The Non-Drowsy TopCare Products cause drowsiness.**

7. In truth, products containing DXM—like each of the Non-Drowsy TopCare Products—do cause drowsiness. Drowsiness is a documented side effect of DXM at the recommended dosages. Authorities such as the National Library of Medicine [5] list drowsiness as a side effect of DXM.

8. Indeed, drowsiness is a common side effect at the recommended dosages. A study of DXM found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine.[6] The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied. And the patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many Non-Drowsy TopCare Products.[7]

---

[5] Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed November 22, 2021).

[6] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997). The study reports this side effect as "somnolence." Somnolence means "the quality or state of being drowsy." Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence (last accessed November 22, 2021).

[7] For example, TopCare Tussin CF liquid contains 20 mg of DXM per 10 ml of syrup and the recommended dosage is 10 ml orally every 4 hours. https://www.instacart.com/products/220093-topcare-tussin-cf-multi-symptom-cold-for-adults-4-fl-oz. Likewise, the TopCare Cold & Flu Relief Softgels contain 10 mg of DXM per capsule and the recommended dosage is two capsules every 4 hours. https://www.themarketsonline.com/shop/pantry/health_and_personal_care/medicine_cabinet/cough_cold_and_flu_treatment/top_care_cold_and_flu_relief_day_time_softgels/p/25365

9. Furthermore, the FDA's adverse event report database confirms that sedation (i.e., drowsiness) is one of the most frequently-cited side effects of dextromethorphan-containing products. [8]

10. For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting DXM. [9]

| | | | | |
|---|---|---|---|---|
| Cough | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives after the last dose (see above).** |

**C. Defendant's Non-Drowsy representations misled reasonable consumers.**

11. The Food and Drug Administration prohibits drug labeling that is "false or misleading." 21 C.F.R. § 201.6. It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

12. Defendant's false, deceptive, and misleading "Non-Drowsy" label statement violates 21 U.S.C. § 352(a)(1) and the so-called "little FDCA" statutes adopted by many states [10], which deem a drug misbranded when "its labeling is false or misleading in any particular."

[8] Sedation is associated with drowsiness. *See* IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")

[9] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

[10] *See, e.g.*, 410 ILCS 620/15.

13. Defendant's false, deceptive and misleading label statements are unlawful under state Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

14. Illinois has expressly adopted the federal drug labeling requirements as its own: "[A] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal drug labeling laws is an independent violation of Illinois law and actionable as such.

15. Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 352(a)(1) which states, "[a] drug ... shall be deemed to be misbranded ... If its labeling is false or misleading in any particular."

16. The ILCS incorporates the exact language of the FDCA in 410 ILCS 620/15 by stating, "[a] drug or device is misbranded - (a) If its labeling is false or misleading in any particular."

17. Based on the fact that Defendant labels the Non-Drowsy TopCare Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness. Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products. Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy."[11] This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness."[12]

18. TopCare's advertisements and labeling do not contain any language that a reasonable consumer would understand to qualify these representations, or that would otherwise

[11] "How to read over the counter (OTC) drug labels," Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm

[12] https://www.merriam-webster.com/medical/nondrowsy

put a reasonable consumer on notice of the fact that the Non-Drowsy TopCare Products actually cause drowsiness.

19. Unlike Defendant, some other drug makers do not falsely claim that DXM-products are non-drowsy. For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt. But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth:




20. Defendant could have simply omitted the false and misleading statement, "Non-Drowsy" from its products.

21. Or, if Defendant wanted to say something to indicate that a Non-Drowsy TopCare Product might cause *less* drowsiness than another TopCare product, it could have made a truthful statement to this effect, as other drug makers do.

22. For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate. Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness. The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":




23. Because Defendant makes and sells the Non-Drowsy TopCare Products, Defendant researched the known and common side effects of DXM. This is diligence that large companies like Defendant would do when selling a drug. As a result, Defendant knew that DXM causes drowsiness. Furthermore, Defendant controls its labeling, knowingly put on the "Non-Drowsy" representations, and knows the plain meaning of "Non-Drowsy." Finally, it is standard practice in the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading. For these reasons, Defendant knew that its labeling was false and misleading, or was reckless or willfully blind to this fact. And as alleged above, Defendant intended that consumers would rely on the "Non-Drowsy" labeling, so that consumers would purchase more products, pay a price premium, and buy them as alternatives to its "Drowsy" products.

24. Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer. In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy. For example, all else equal, a

reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake). As a second example, if a consumer is planning to engage in activities that require them to be alert, or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does. Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous. For example, taking a drug that causes drowsiness while driving, or flying a plane, is dangerous.

25. Defendant's false statements increased the demand for Non-Drowsy TopCare Products and allowed Defendant to charge a price premium. As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving). As a result, Defendant was able to charge more for these products than it would have been able to had the labeling been truthful. Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for these products. As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury.

**D. Plaintiff was misled by Defendant's misrepresentations.**

26. In August 2021, Plaintiff bought a bottle of TopCare "Non-Drowsy" Tussin CF Multi-Symptom Cold Medication from ShopRite in Middletown, New York. The package said "Non-Drowsy" and prominently on the label, and she read and relied on those statements when purchasing the product. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the TopCare "Non-Drowsy" Multi-Symptom Cold Medication on the same terms, or would not have purchased them at all, had she known these representations were not true. However, Plaintiff did not receive the benefit of her bargain because her Non-Drowsy TopCare Product was not, in fact, "Non-Drowsy" medication.

When Plaintiff took the medication as directed by Defendant, she became unexpectedly drowsy. She would not have bought this product had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product.

**E. Class Action Allegations.**

27. Plaintiff brings the asserted claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy TopCare Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

28. For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "**Consumer Protection Subclass**").

29. For certain claims, in the alternative, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy TopCare Products in New York (the "**New York Subclass**").

30. The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

31. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

*Commonality*

32. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether the Non-Drowsy TopCare Products cause drowsiness;
- Whether Defendant's labelling of the Non-Drowsy TopCare Products as "non-drowsy" is deceptive and misleading;
- Whether Defendant violated state consumer protection statutes;
- Whether Defendant committed a breach of express warranty; and,
- Damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

33. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Non-Drowsy TopCare Products. Like the proposed class, Plaintiff would not have purchased the products, or would have paid less for them, had she known that they cause drowsiness.

*Predominance and Superiority*

34. The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

35. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be

determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant breached an express warranty by falsely marketing products that cause drowsiness as "Non-Drowsy."

36. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## V. Causes of Action.

### Count I: Violations of State Consumer Protection Acts (on behalf of Plaintiff and the Consumer Protection Subclass)

37. Plaintiff incorporates by reference each and every factual allegation set forth above.

38. This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following. |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |

| | |
|---|---|
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
|---|---|
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following. |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

39. Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers. Defendant's conduct, including the false labelling of the Non-Drowsy TopCare Products and sale of those misleading products to Plaintiff and Class members, violates each statute's prohibitions.

40. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members. Defendant's misrepresentations were misleading to a reasonable consumer, and Plaintiff and Class members reasonably relied on Defendant's misrepresentations.

41. Defendant intended that Plaintiff and the proposed Class members would rely on its materially deceptive representations. Defendant was also aware of the side effects of DXM and thus knew that its representations were false and were likely to mislead consumers.

42. For applicable statutes, Plaintiff mailed Defendant a written notice and demand for correction on February 8, 2022. Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

43. Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Non-Drowsy TopCare Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation. In this way, Plaintiff and the proposed Class members have suffered an ascertainable loss, in an amount to be determined at trial.

**Count II: Violation Of New York's Gen. Bus. Law § 349**
**(on behalf of Plaintiff and the New York Class)**

44. Plaintiff incorporates by reference each and every factual allegation set forth above.

45. Plaintiff brings this cause of action individually and for the New York Subclass, seeking reasonable attorneys' fees, actual damages, and other relief.

46. Plaintiff and the Subclass purchased Non-Drowsy TopCare Products in New York.

47. Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the "Non-Drowsy" nature of its Non-Drowsy TopCare Products, misleading consumers into believing the Non-Drowsy TopCare Products would not cause drowsiness.

48. Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased Non-Drowsy TopCare Products for her own personal use. In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that Non-Drowsy TopCare Products would not cause drowsiness. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

49. Defendant's deceptive acts and practices were directed at consumers.

50. Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase the Non-Drowsy TopCare Products and/or pay more for them under the false – but reasonable – belief that the Non-Drowsy TopCare Products would not cause drowsiness, when they do. By

advertising so prominently that Non-Drowsy TopCare Products would not cause drowsiness, Defendant proves that information about the "Non-Drowsy" nature of the Products is material to consumers. If such information were not material, Defendant would not feature it prominently on the front label of every Non-Drowsy TopCare Product package. As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Non-Drowsy TopCare Products to unsuspecting consumers across New York. If Defendant had advertised its Non-Drowsy TopCare Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

51. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff and other Members of the New York Subclass were injured in that they: (1) paid a price premium for Non-Drowsy TopCare Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Non-Drowsy TopCare Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Non-Drowsy TopCare Products they purchased had less value than if Defendant's representations about the "Non-Drowsy" nature of the Products were truthful.

52. On behalf of herself and Members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**Count III: Violation Of New York's Gen. Bus. Law § 350**
**(on behalf of Plaintiff and the New York Class)**

53. Plaintiff incorporates by reference each and every factual allegation set forth above.

54. Plaintiff brings this cause of action individually and for the New York Subclass, seeking reasonable attorneys' fees, actual damages, and other relief.

55. Plaintiff and the Subclass purchased Non-Drowsy TopCare Products in New York.

56. Defendant engaged in a campaign of false advertising with regard to the "Non-Drowsy" nature of the Non-Drowsy TopCare Products to mislead consumers into believing the Non-Drowsy TopCare Products they purchase would not cause drowsiness.

57. Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased Non-Drowsy TopCare Products for her own personal use. In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Non-Drowsy TopCare Products would cause drowsiness, when they do. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

58. Defendant's deceptive acts and practices were directed at consumers.

59. Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations. If Defendant had advertised its Non-Drowsy TopCare Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Non-Drowsy TopCare Products or would not have paid as much as they did for them.

60. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiff and other Members of the New York Subclass were injured in that they: (1) paid a price premium for Non-Drowsy TopCare Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Non-Drowsy TopCare Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Non-Drowsy TopCare Products they purchased had less value than if Defendant's representations about the "Non-Drowsy" nature of the Products were truthful.

61. On behalf of herself and Members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**Count IV: Breach of Express Warranty**
**(on behalf of Plaintiff and a Nationwide Class)**

62. Plaintiff incorporates by reference each and every factual allegation set forth above.

63. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.

64. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Non-Drowsy TopCare Products, issued material, written warranties by representing that the products were "Non-Drowsy" products. These were an affirmation of fact about the products (i.e., a description of the effects) and a promise relating to the goods.

65. Defendant marketed Non-Drowsy TopCare Products to consumers, and Defendant's warranty was the basis of the bargain and was relied-upon by Plaintiff and Class members.

66. The Non-Drowsy TopCare Products do not conform to the above-referenced representation because they cause drowsiness. Thus, the warranty was breached.

67. Plaintiff and members of the Nationwide Class were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased Non-Drowsy TopCare Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the warranty.

68. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters on February 8, 2022.

**Count V: Breach of the Magnuson-Moss Warranty Act**
**(on behalf of Plaintiff and the Nationwide Class)**

69. Plaintiff incorporates by reference each and every factual allegation set forth above.

70. Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

71. Defendant supplied Non-Drowsy TopCare Products to consumers and Non-Drowsy TopCare Products are consumer products.

72. Defendant issued material, written warranties by representing that the products were "Non-Drowsy"" products. This was an affirmation of fact about the material in the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

73. Defendant represented that the material inside the Non-Drowsy TopCare Products (the ingredients) would meet a specified level of performance over a specified period of time. Defendant represented that, when taken at the recommended dosages, the products' ingredients would not cause drowsiness and drowsiness is not a side-effect.

74. Defendant marketed Non-Drowsy TopCare Products to consumers, and Defendant's warranty was the basis of the bargain and was relied-upon by Plaintiff and Class members.

75. In fact, the Non-Drowsy TopCare Products do not conform to the above-reference representation because, as alleged in detail above, they cause drowsiness. Thus, the warranty was breached.

76. Plaintiff provided Defendant with notice of this breach of warranty by mailing a notice letter to Defendant's headquarters on February 8, 2022.

77. Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Non-Drowsy TopCare Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because the products are sold at a price premium due to the warranty.

**Count VI: Intentional Misrepresentation**
**(on behalf of Plaintiff and the National Class)**

78. Plaintiff incorporates by reference the facts alleged above.

79. Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

80. As alleged in detail above, Defendant's labeling represented to Plaintiff and Class members that the Products do not cause drowsiness and that drowsiness is not a side effect of these products.

81. These representations were false and misleading. As alleged above, the Products do cause drowsiness and drowsiness is a documented side effect.

82. As alleged in detail above, when Defendant made these misrepresentations, it knew that they were false, was reckless to the truth, or was willfully blind.

83. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

84. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

85. Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

**VI. Jury Demand.**

86. Plaintiff demands a jury trial on all issues so triable.

**VII. Prayer for Relief.**

87. Plaintiff seeks the following relief for herself and the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, including statutory, treble, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

Date: February 10, 2022

Respectfully submitted,

By: */s/ Jonas Jacobson*
Jonas Jacobson

DOVEL & LUNER, LLP
Jonas Jacobson (Cal. Bar No. 269912)
Simon Franzini (Cal. Bar No. 287631)
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066
jonas@dovel.com
simon@dovel.com

BURSOR & FISHER, P.A.
Yeremey Krivoshey (Cal. Bar No. 295032)
Brittany S. Scott (Cal. Bar No. 327132)*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
ykrivoshey@bursor.com
bscott@bursor.com

*Counsel for Plaintiff*

*Generally Admitted