**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NANCY CALCHI, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | No. 1:22-cv-00747 |
| Plaintiff, | ) ) | |
| | ) | Hon. Steven C. Seeger |
| v. | ) | Mag. Judge: Hon. Heather K. McShain |
| | ) | |
| TOPCO ASSOCIATES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>TOPCO ASSOCIATES, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD ................................................................................................................... 4

ANALYSIS ................................................................................................................................... 5

     I.     Plaintiff's state-law claims are preempted because they seek to impose a requirement that is not identical with the requirements the FDA imposed after considering the issue of potential drowsiness ............................................. 5

          A.     The product complies with FDA requirements governing its products' labeling and packaging. ............................................................. 5

          B.     Plaintiff seeks to impose additional labeling requirements not identical to those established by the FDA .................................................. 6

     II.    Plaintiff cannot assert claims under the consumer-protection or express-warranty laws of any state other than New York .................................................... 8

     III.   Plaintiff's New York consumer-protection claims fail because of that law's safe harbor, because she has not plausibly alleged that "non-drowsy" is materially false or misleading, and because she has not adequately pleaded an injury ......................................................................................................... 9

     IV.   Plaintiff has not plausibly alleged that the statement "non-drowsy" created an express warranty .............................................................................................. 12

     V.    The Magnuson-Moss Warranty Act claim alleged here fails to meet the requisite standard for bringing such a claim. ....................................................... 12

     VI.   Plaintiff cannot properly plead a claim for intentional misrepresentation ............ 14

     VII.  Plaintiff lacks standing to pursue injunctive relief. ............................................. 14

CONCLUSION ............................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alce v. Wide Foods, Inc.*,
    17 Civ. 2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ....................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................4

*Baron v. Pfizer, Inc.*,
    42 A.D.3d 627, 840 N.Y.S.2d 445 (2007) ...................................................................12

*Bassaw v. United Indus. Corp.*,
    482 F. Supp. 3d 80 (S.D.N.Y. 2020)............................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................4

*Benson v. Fannie May Confections Brands, Inc.*,
    2018 WL 1087639 (N.D. Ill. 2018) .............................................................................15

*Bowling v. Johnson & Johnson*,
    65 F. Supp. 3d 371 (S.D.N.Y. 2014)..............................................................................8

*Budhani v. Monster Energy Co.*,
    527 F. Supp. 3d 667 (S.D.N.Y. 2021)..........................................................................10

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) .................................................................................4, 15

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
    516 F. Supp. 3d 370 (S.D.N.Y. 2021)..........................................................................10

*CBS Inc. v. Ziff–Davis Publ'g Co.*,
    553 N.E.2d 997, 75 N.Y.2d 496 (1990).......................................................................12

*Chill v. General Electric Co.*,
    101 F.3d 263 (2d. Cir.1996).........................................................................................14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................................................15

*Collela v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) .........................................................................11

**Page(s)**

*Dunham v. Covidien*, LP,
    498 F. Supp. 3d 549 (S.D.N.Y. 2020) ..................................................................11

*Elder v. Bimbo Bakeries USA, Inc.*,
    No. 3:21-CV-637-DWD, 2022 WL 816631 (S.D. Ill. Mar. 17, 2022) ....................13

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
    910 N.E.2d 976 (N.Y. 2009) ..................................................................................14

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ..................................................................................10

*Floyd v. Pepperidge Farm, Inc.*,
    No. 21-CV-525-SPM, 2022 WL 203071 (S.D. Ill. Jan. 24, 2022) .........................13

*Grabowski v. Dunkin' Brands, Inc.*,
    2017 WL 6059966 (N.D. Ill. Dec. 7, 2017) ............................................................15

*Harris v. Topco Assocs., LLC*,
    538 F. Supp. 3d 826 (N.D. Ill. 2021) ..........................................................5, 6, 7, 8

*Houston v. United States*,
    638 F. App'x 508 (7th Cir. 2016) .............................................................................8

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .................................................................................8

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09 CV 3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ...............................9

*In re Sears, Roebuck & Co.*,
    No. 05 C 2623, 2006 WL 1443737 (N.D. Ill. May 17, 2006) .................................13

*IWOI, LLC v. Monaco Coach Corp.*,
    581 F. Supp. 2d 994 (N.D. Ill. 2008) .....................................................................13

*Izquierdo v. Mondelez Int'l, Inc.*,
    No. 2:20-cv-01603-KAM-ST, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..........11

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ..................................................................................10

*Manuel v. Pepsi-Cola Co.*,
    763 F. App'x 108 (2d Cir. 2019) ............................................................................11

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) ...................................................................................8

**Page(s)**

*Rosenblum v. Travelbyus.com Ltd.*,
    299 F.3d 657 (7th Cir. 2002) ............................................................3

*Scherr v. Marriott Int'l, Inc.*,
    703 F.3d 1069 (7th Cir. 2013) ........................................................15

*Schimmer v. Jaguar Cars*,
    384 F.3d 402 (7th Cir. 2004) ..........................................................13

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir, 1994)............................................................14

*Singleton v. Fifth Generation, Inc.*,
    2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)....................................13

*Smith-Brown v. Ulta Beauty, Inc.*,
    No. 18 C 610, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019).................9

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)........................................................................15

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ..............................................5, 6, 7, 8

*United States v. Articles of Drug ... Promise Toothpaste for Sensitive Teeth*,
    594 F. Supp. 211 (N.D. Ill. 1984) ................................................2, 5

*Weiner v. Snapple Bev. Corp.*,
    No. 07 Civ. 8742 (DLC), 2011 WL 196930 (S.D.N.Y. Jan. 21, 2011) ..................11

*Wynn v. Topco Assocs., LLC*,
    No. 19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ..................12

*Zottola v. Eisai Inc.*,
    --- F. Supp. 3d ---, 2021 WL 4460563 (S.D.N.Y. Sept. 29, 2021) ..........11

**Statutes**

15 U.S.C. § 2301.................................................................................13

15 U.S.C. § 2310...........................................................................13, 14

21 U.S.C. § 379.............................................................................1, 5

N.Y. U.C.C. Law § 2-607...............................................................12

**Rules**

Fed. R. Civ. P. 8................................................................................4

iv

<u>Page(s)</u>

**Other Authorities**

21 C.F.R. § 330.1 ...................................................................................................................2, 5

21 C.F.R. § 330.10 ........................................................................................................................2

21 C.F.R. § 341.1 ...........................................................................................................2, 5, 6, 10

21 C.F.R. § 341.74 .................................................................................................................. *passim*

41 Fed. Reg. 38,312-38,418 (Sept. 9, 1976) ...............................................................................5

44 Fed. Reg. 51,512-51,539 (Aug. 31, 1979) ......................................................................3, 6, 9

48 Fed. Reg. 48,576-48,589 (Oct. 19, 1983) ...................................................................3, 6, 7, 9

Federal Judicial Center Reference Manual on Scientific Evidence (3d ed.),
    2011 WL 7724256 .................................................................................................................11

## **INTRODUCTION**

Plaintiff Nancy Calchi alleges that in August 2021 she took TopCare "non-Drowsy" Tussin CF Multi-Symptom Cold Medication ("the product") that contained the active ingredient dextromethorphan hydrobromide (DXM). She alleges that at some later point she became "unexpectedly drowsy." She attributes this to DXM, and complains that Defendant failed to warn her about this potential side effect. According to Plaintiff, had she known she might become unexpectedly drowsy, she would not have purchased the product. The Court should dismiss the complaint for a number of reasons.

First, Plaintiff's claims are expressly preempted. The Food, Drug, and Cosmetic Act bars state-law claims that seek to impose labeling requirements that are "different from," "in addition to," or "otherwise not identical" with federal labeling requirements. 21 U.S.C. § 379r(a). The Food and Drug Administration has extensively considered and regulated the labeling of cough suppressants containing a variety of active ingredients, including DXM, and has concluded that a drowsiness warning is not required for products containing DXM. Because Plaintiff seeks to use state law to impose an additional, non-identical labeling requirement, her claims are preempted.

Second, Plaintiff is a New York resident who alleges that she bought the product in New York. She therefore cannot assert claims under the consumer-protection or express-warranty laws of any state other than New York, and the Court should dismiss those claims.

Third, Plaintiff's claims fail because she has not pleaded facts supporting a plausible claim that "non-drowsy" is materially false or misleading, or that the statement created an express warranty.

Fourth, Plaintiff's claim under the Magnuson-Moss Warranty Act fails along with her state-law warranty claim and for other reasons specific to the elements required under the Act.

Fifth, Plaintiff fails to plead an intentional-misrepresentation cause of action because she fails to allege a false statement upon which consumers relied and were damaged as a result.

Finally, Plaintiff lacks standing to pursue injunctive relief because she has not alleged facts making it plausible that she is likely to suffer the same injury again in the future. For that reason as well, the Court should grant Topco's motion.

## BACKGROUND

The FDA regulates most over-the-counter ("OTC") medications through a monograph process. A monograph is a detailed set of regulations that describe the conditions under which a category of drugs may be marketed without a prescription. *See* 21 C.F.R. § 330.1; *United States v. Articles of Drug ... Promise Toothpaste for Sensitive Teeth,* 594 F. Supp. 211, 214 (N.D. Ill. 1984) (describing the monograph process and its origins). The FDA has described a monograph as a kind of "recipe book" that sets out the FDA-approved active ingredients for a given therapeutic class of OTC drugs and specifies acceptable doses, formulations, and labeling.[1]

A monograph is developed only after the FDA has appointed an advisory panel of experts to "review all available data" and make recommendations to the FDA regarding the drugs' safety and effectiveness. 21 C.F.R. § 330.10(a). Based on these recommendations, the FDA publishes a proposed monograph for public comment, then publishes a "tentative final monograph" for further public comment. *Id.* § 310.10(a)(6). After reviewing any objections, the administrative record, and the arguments made at any oral hearing, the FDA publishes a final monograph "establishing conditions under which a category of OTC drugs or a specific drug are generally recognized as safe and effective and not misbranded." *Id.* § 310.10(a)(9). Any over-the-counter drug that complies with a monograph is considered safe, effective, and not misbranded. *See id.*; *Promise Toothpaste for Sensitive Teeth,* 594 F. Supp. at 214.

The FDA has published a final monograph concerning OTC drugs used to relieve coughs, (also known as "antitussives"), and has implemented comprehensive labeling requirements. 52 Fed. Reg. 30,042, 30,055–56 (Aug. 12, 1987) (codified at 21 C.F.R. § 341.74). The labels must, for example, include approved language describing the indications for use. 21 C.F.R. § 341.74(b). They must include certain specified warnings, directions, and dosages. 21 C.F.R. § 341.74(c), (d). The regulations include specific requirements for products that contain certain active ingredients, including DXM. *See* 21 C.F.R. §§ 341.74(b)(vi) & (vii), 341.74(c)(v) & (vi), 341.74(d)(iii). An OTC cough suppressant is "not misbranded" if its labels meet the requirements set forth in these regulations. 21 C.F.R. § 341.1(a).

---

[1] *See* FDA.gov, "Drug Applications for Over-the-Counter (OTC) Drugs" (last accessed Apr. 15, 2022).

For many cough medicines, the FDA requires a disclosure that the products "may cause drowsiness" or "may cause marked drowsiness." The FDA expressly declined to require a similar disclosure for products that contain DXM because "[t]he agency is not aware of data demonstrating that the antitussive ingredient[] ... dextromethorphan ... require[s] a drowsiness warning." 48 Fed. Reg. 48,576, 48,589 (Oct. 19, 1983). The FDA made this determination based on studies showing that the incidence of drowsiness in participants who took dextromethorphan was *lower* than the incidence in participants who took only a placebo. 44 Fed. Reg. 51,512, 51,526, 51,539 (Aug. 31, 1979) (drowsiness experienced in 10% of the placebo group and 6–7% of the dextromethorphan group).

Plaintiff is a New York resident. Compl. ¶ 6. She alleges she bought Tussin CF Multi-Symptom Cold Medication from ShopRite in Middletown, New York in August 2021. *Id*. ¶ 26. The product's label bears the phrase "Non-Drowsy" as well as the relevant dosage instructions and ingredient lists. *Id*. ¶ 2. The ingredient list states that the product contains DXM. *See id*. According to Plaintiff, she became "unexpectedly drowsy" after taking the product. *Id*. ¶ 26. She does not otherwise describe the timing or circumstances involved.

Plaintiff claims "drowsiness is a known side-effect" of DXM. *Id*. ¶¶ 3, 26. In support, she cites a study asserting that "somnolence is a common side effect of centrally acting antitussive drugs," saying that "10.4% of users of products containing [DXM] develop drowsiness within three days of starting treatment...." *Id*. ¶ 8 & n.6 (citing E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Theraputics 89 (1997) (attached as Ex. A to Defendant's Declaration in Support of Motion to Dismiss).[2] In fact, the study found "somnolence was reported for a low percentage of patients." *See id*. The purpose of the study was to compare the rates of drowsiness associated with DXM and levodropropizine (another cough suppressant). *Id*. Unlike the FDA's studies, it did not use a control group. *Compare* Ex. A at 8 ("Lack of a placebo control group might represent a limitation of this trial.") *with* 44 Fed.

---

[2] The Court may consider the remainder of the study because by citing it, Plaintiff has incorporated it into her complaint by reference. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

Reg. 51,512, 51,539 (Aug. 31, 1979) (noting studies showing that rate of drowsiness associated with DXM was less than that in control group).

Plaintiff alleges that the product's label does not put a reasonable consumer on notice of the fact that it causes drowsiness. Compl. ¶ 18. She also alleges that by using the term "non-drowsy," Defendant materially misled consumers about the effects of the cough suppressant. *Id*. ¶ 4. She claims Defendant excluded mention of the fact that the product may cause drowsiness so that consumers would buy more or pay more for them. *Id*. ¶ 6. She alleges only that she would not have bought the product if she knew she might become unexpectedly drowsy later, or she would have paid less. *Id*. ¶¶ 4, 26.

Plaintiff has sued Topco Associates alleging six causes of action: (1) violations of numerous state consumer protection acts, Compl. ¶¶ 37–44; (2) a violation of New York's Gen. Bus. Law § 349, *id*. ¶¶ 44–52; (3) a violation of New York's Gen. Bus. Law § 350, *id*. ¶¶ 53–61; (4) breach of express warranty, *id*. ¶¶ 62–68; (5) breach of the Magnuson-Moss Warranty Act ("MMWA"), *id*. ¶¶ 69–77; and (6) intentional misrepresentation, *id*. ¶¶ 78–85. Plaintiff intends to represent a "nationwide class" of consumers who bought a Topco product labeled "non-drowsy." *Id*. ¶ 27. At the heart of her claims is the contention that she relied on the "non-drowsy" statement when deciding to buy it, she became drowsy sometime after taking it, and she would not have bought it had she known she might become unexpectedly drowsy later. *Id*. ¶ 26.

## LEGAL STANDARD

A complaint must allege enough facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8. Labels, conclusions, and mere assertions are not "facts" entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79. Determining whether the complaint states a claim depends on the context of the case and requires the court to "draw on its judicial experience and common sense." *Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). Unless the complaint pleads sufficient facts to cross the line "from conceivable to plausible," it must be dismissed. *Twombly*, 550 U.S. at 570

## ANALYSIS

**I.**  **Plaintiff's state-law claims are preempted because they seek to impose a requirement that is not identical with the requirements the FDA imposed after considering the issue of potential drowsiness.**

To establish national uniformity for the labeling of OTC drugs, Congress prohibited states from establishing "any requirement ... that is different from or in addition to, or that is otherwise not identical with, a requirement" imposed under federal law. 21 U.S.C. § 379r. Thus, any state law that provides for labeling requirements that are not identical with those set forth in the FDCA is expressly preempted. *Turek v. Gen. Mills, Inc*., 662 F.3d 423, 426 (7th Cir. 2011); *Harris v. Topco Assocs., LLC,* 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021) ("States cannot impose requirements that are different from or more burdensome than those requirements."). As discussed above, federal requirements for OTC drugs may be set forth in FDA monographs. *See, e.g., Promise Toothpaste for Sensitive Teeth,* 594 F. Supp. at 214. The FDA has done exactly this with regard to antitussive/cough suppressant medications, and among other things has addressed (and rejected) concerns that products containing DXM may cause drowsiness. *See* 21 C.F.R. § 341.1(a), part 341. An OTC antitussive product is not misbranded if it complies with the requirements set forth in part 341. 21 C.F.R. § 341.1(a); *see also* 21 C.F.R. § 330.1. Plaintiff's claims, therefore, ought to be dismissed because the product complied with all FDA requirements, and Plaintiff cannot use state law to impose additional or different ones.

### A.  The product complies with FDA requirements governing its products' labeling and packaging.

In 1972, the FDA began the monograph process for OTC cold and cough medications. *See* 41 Fed. Reg. 38,312, 38,314 (Sept. 9, 1976). The agency appointed an advisory panel of experts to evaluate the safety and efficacy of active ingredients including dextromethorphan. *Id.* at 38,314. The panel thoroughly reviewed literature and data concerning the safety and efficacy of various ingredients, held more than 20 multi-day working meetings, and considered presentations from more than 40 witnesses. *Id.* at 38,314, 38,319–418. After publishing proposed and tentative final monographs <u>and</u> receiving public comments, the FDA published its final monograph for OTC drugs used to relieve coughs, "antitussives," with comprehensive labeling

requirements for products that contain DXM. 52 Fed. Reg. 30,042, 30,055–56 (Aug. 12, 1987) (codified at 21 C.F.R. § 341.74). The requirements include an approved list of indications, warnings, and directions. *See* 21 C.F.R. §§ 341.74(b)(3)(vi)-(vii), (c)(4)(v)-(vii), (d)(1)(iii).

The monograph proceedings included consideration of the potential for drowsiness arising from certain active ingredients. The FDA did not believe the risk associated with DXM was material: "The agency is not aware of data demonstrating that the antitussive ingredients codeine and [DXM] could be classified as Category I nighttime sleep-aids or that they require a drowsiness warning." 48 Fed. Reg. 48,576, 48,589 (Oct. 19, 1983). The FDA also relied on studies showing that the incidence of drowsiness in participants who took dextromethorphan was *lower* than the incidence in participants who took only a placebo. 44 Fed. Reg. 51,512, 51,526, 51,539 (Aug. 31, 1979) (drowsiness experienced in 10% of the placebo group and 6–7% of the dextromethorphan group). Accordingly, the FDA expressly declined to require manufacturers to disclose drowsiness as a potential side-effect of DXM in the final monograph. 21 C.F.R. § 341.1(a).

By contrast, the final monograph requires other products not at issue in this case, containing antitussives other than DXM, to bear warnings that they "may cause drowsiness" or "[m]ay cause marked drowsiness." 21 C.F.R. §§ 341.74 (c)(4)(viii)-(ix). Plaintiff does not, and cannot, allege that Topco failed to comply with the specific labeling requirements for medications that include DXM as laid out in the FDA monograph.

### B. Plaintiff seeks to impose additional labeling requirements not identical to those established by the FDA.

The essence of Plaintiff's claims is a demand for additional language on the packaging explaining that the product may cause drowsiness. Compl. ¶¶ 2–4. She claims Defendant should be liable given that the products "do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect." *Id*. ¶ 4. But as discussed above, after an extensive regulatory process where drowsiness was considered, the FDA has determined the required label, and Plaintiff cannot use state law in an effort to impose different *or additional* requirements. *Turek*, 662 F.3d at 427; *Harris*, 538 F. Supp. 3d at 831.

In *Harris*, Plaintiff alleged that Topco's labels for a liquid-acetaminophen product was misleading because the word "infant" suggested a unique formula. 538 F. Supp. 3d at 828–29. She complained that Topco charged an increased price for the "infants" product without disclosing that the "infant" and "children" products were pharmacologically identical. *Id*. at 832. Defendant moved to dismiss on the basis of express preemption. *Id*. at 828. The Court agreed, holding the Plaintiff was trying to impose additional obligations not imposed by federal regulation. *Id*. at 833. As in this case, the FDA had regulated the acetaminophen products pursuant to a monograph. *Id*. at 831. The *Harris* court acknowledged that the products at issue complied with the monograph's requirements that the label contain (1) the word "children's" and the trade name; or (2) the trade name followed by "for Children." *Id*. at 832. Because the monograph did not require specific disclaimers concerning infant products or the interchangeability of the two, Plaintiff's claims were preempted. *Id*. at 833.

Just as in Harris, Plaintiff here takes issue with the failure to disclose the potential for drowsiness and the inclusion of the phrase "non-drowsy". Since the FDA did not require a drowsiness disclosures for products that contain DXM section 379r preempts these claims. 48 Fed. Reg. at 48,589. After a decade-long regulatory process, the FDA's final monograph set forth the specific indications, warnings, and directions that must appear on a product containing DXM. *See* 21 C.F.R. §§ 341.74(b)(3)(vi)–(vii), (c)(4)(v)–(vii), (d)(1)(iii). Thus, the FDA's determination and section 379r preclude Plaintiff from using state law to try to impose additional or different disclosure requirements.

In *Turek*, the Seventh Circuit affirmed a preemption finding. *See Turek*, 662 F.3d at 427. There, the Plaintiff took issue with a chewy bar label and sought additional language explaining the origin of the product's principal source of fiber. *Id*. at 426. Specifically, Plaintiff alleged that the type of fiber used was inferior to "natural" fiber as it might be harmful to some customers. *Id*. According to the Plaintiff, the packaging should have put customers on notice of this characterization. *Id*. The Court disagreed. *Id*. at 427. It explained that "[t]he disclaimers that the Plaintiff wants added to the labeling of the defendants' inulin-containing chewy bars are not identical to the labeling requirements imposed on such products by federal law, and so they are

7

barred." *Id.*; *see also Houston v. United States*, 638 F. App'x 508 (7th Cir. 2016) (finding preemption where defendant complied with federal authority detailing label requirements).

Similar to the claims in *Turek,* Plaintiff's state-law claims are preempted because Plaintiff cannot override FDA authority governing the product labels at issue. Plaintiff's state-law claims attempt to do "exactly what Congress, in passing section 379r of the FDCA, sought to forbid: using state law causes of action to bootstrap labeling requirements that are 'not identical with' federal regulation." *Bowling v. Johnson & Johnson,* 65 F. Supp. 3d 371, 376 (S.D.N.Y. 2014) (finding preemption). Plaintiff will likely argue that she is not seeking to interfere with the FDA-approved label, but only to force manufacturers to remove the term "Non-Drowsy," which is not specifically mentioned in the regulations. But the fact remains that she is trying to use state law to create a label that is not *identical* to the label subject to FDA regulation. Her claims are therefore preempted. *See Harris*, 538 F. Supp. 3d at 833 (holding state claims preempted if they seek to "impose additional obligations . . . not imposed by" a monograph).

## II.    Plaintiff cannot assert claims under the consumer-protection or express-warranty laws of any state other than New York.

Plaintiff asserts claims based on the laws of 45 jurisdictions, although she is the sole named plaintiff and is a New York resident who bought the product in New York. Compl. ¶¶ 26, 38. Because she alleges no facts connecting her claim with any other state, New York law applies to it, and she could not recover under any other state's law. It follows that she does not have standing to assert claims under those laws, and that does not change because she purports to bring a class action. *See, e.g.*, *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the back door of a class action."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules...."). While district courts in this Circuit have split as to whether this should be resolved at the pleading or class-certification stages, this Court should follow the former approach. *See, e.g.*, *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 932022, at *5 (N.D. Ill. Feb. 26, 2019); *In re Dairy Farmers of Am., Inc. Cheese*

*Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000, at *7–8 (N.D. Ill. Aug. 23, 2013). There is no reason to waste resources where the named plaintiff cannot assert a claim.

### III. Plaintiff's New York consumer-protection claims fail because of that law's safe harbor, because she has not plausibly alleged that "non-drowsy" is materially false or misleading, and because she has not adequately pleaded an injury.

Even if preemption did not apply directly, the fact and extent of the FDA regulation would preclude Plaintiff's GBL claims because of the law's "safe harbor." The statute explicitly provides that "it shall be a complete defense that the [deceptive] act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts." N.Y. G.B.L. §§ 349(d). That is a complete defense here.

Plaintiff does not allege that Defendant failed to comply with FDA regulations. As discussed above, the FDA has published its final monograph for over-the-counter drugs used to relieve coughs and considered at length the potential for drowsiness. 52 Fed. Reg. 30,042, 30,055–56 (Aug. 12, 1987) (codified at 21 C.F.R. § 341.74). The final monograph was promulgated without a drowsiness-related warning because "[t]he agency is not aware of data demonstrating that the antitussive ingredients codeine and [DXM] ... require a drowsiness warning." 48 Fed. Reg. 48,576, 48,589 (Oct. 19, 1983). By contrast, the final monograph requires products containing certain antitussives <u>other</u> than DXM to bear warnings that they "may cause drowsiness" or "[m]ay cause marked drowsiness." 21 C.F.R. §§ 341.74 (c)(4)(viii)– (ix). Plaintiff does not, and cannot, allege that Defendant failed to comply with the specific labeling requirements for medications that include DXM as laid out in the FDA monograph. Thus, the safe harbor is a complete defense to her GBL claims.

Beyond that, the regulations show the implausibility of Plaintiff's allegations that reasonable consumers could be misled by the term "non-drowsy" on such products. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (holding plaintiffs must allege facts

showing that "reasonable consumer[s] acting reasonably under the circumstances" would be misled); *Budhani v. Monster Energy Co*., 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021) (holding plaintiffs must "plausibly allege that a significant portion of the general consuming public," acting reasonably, could be misled). To successfully pursue a GBL claim, a plaintiff must allege that a defendant engaged in consumer-oriented conduct that is materially misleading and that plaintiff suffered injury as a result of the allegedly deceptive act or practice. *Campbell v. Whole Foods Mkt. Grp., Inc*., 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021). In determining whether a reasonable consumer would be misled, context is crucial. *Mantikas v. Kellogg Co*., 910 F.3d 633, 636 (2d Cir. 2018). Although the complaint lacks information about Plaintiff herself or the circumstances surrounding her use of the medication at issue, she seems to be claiming she believed "non-drowsy" necessarily meant she would not become drowsy under any circumstances after taking the product. The label does not make that promise and a reasonable consumer would not interpret it as doing so.

For that matter, Plaintiff does not specifically plead facts supporting her claim that "non-drowsy" is materially misleading. That claim could not be valid unless the product actually did cause a material level of drowsiness—which, as discussed above, the FDA does not believe is true of products containing DXM. Setting aside the FDA's view, Plaintiff pleads no facts making her contrary claim plausible. To begin with, Plaintiff says virtually nothing to explain why she believes the product actually caused her to become, as she puts it, "unexpectedly drowsy." Compl. ¶ 26. Further, Plaintiff cites no facts supporting her claim that drowsiness is in fact a "common side effect" of products with DXM, much less that the effect is material. *See id*. ¶ 8. Notably, the complaint mentions the FDA only once, and even then cites its "adverse event report database" instead of actual regulations. *Id*. at ¶ 9. Plaintiff has pleaded only that there have been some unspecified number of anecdotal reports that unidentified "dextromethorphan-containing products" have caused "sedation" under unknown circumstances. *Id*. The study Plaintiff cites in support lacked a control group and was conducted by a company that manufactured a competing product. Ex. A at 8; *see also Manuel v. Pepsi-Cola Co*., 763 F. App'x 108, 109 (2d Cir. 2019) (rejecting studies cited to support a false advertising claim because

"[n]one of the studies purports to establish a causal relationship . . . that is sufficiently strong"); *see also* Federal Judicial Center Reference Manual on Scientific Evidence (3d ed.), 2011 WL 7724256, at *6 (data from a treatment group without a control group generally reveal very little and can be misleading). Nor is Plaintiff's own experience sufficient to show a reasonable consumer could be misled. *Alce v. Wide Foods, Inc.*, 17 Civ. 2402 (NRB), 2018 WL 1737750, at*9 (S.D.N.Y. Mar. 27, 2018). Rather, Plaintiff is required to demonstrate that the acts or practices of which she complains have a broader impact on consumers at large. *Dunham v. Covidien*, LP, 498 F. Supp. 3d 549, 564 (S.D.N.Y. 2020). She has made no such showing.

Finally, Plaintiff has also failed to plead an injury cognizable under the GBL. Under that statute, a conclusory allegation that a plaintiff would not have purchased a product if she had known "the truth" is not enough. *See, e.g.*, *Zottola v. Eisai Inc.*, --- F. Supp. 3d ---, 2021 WL 4460563, at *3 (S.D.N.Y. Sept. 29, 2021) (holding similar allegation did not establish cognizable injury under GBL §§ 349 and 350). A Plaintiff may allege she paid a "price premium," but must allege facts supporting the claim; merely saying it is not enough. *See Collela v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (holding that "[s]imply recit[ing] the word 'premium' multiple times in [the] complaint does not make Plaintiffs' injury any more cognizable."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 2:20-cv-01603-KAM-ST, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (holding conclusory allegations of injury insufficient to state GBL claim); *Weiner v. Snapple Bev. Corp.*, No. 07 Civ. 8742 (DLC), 2011 WL 196930, at *3 (S.D.N.Y. Jan. 21, 2011) (holding plaintiffs "failed to allege sufficient facts to show that they in fact paid a premium for the 'All Natural' label"); *see also Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 840 N.Y.S.2d 445, 448 (2007) (plaintiff's allegation that she "would not have purchased" the prescription drug Neurontin "absent defendant's deceptive practices" was insufficient to set forth a cognizable injury).

Here, Plaintiff alleges nothing more than the fact that she would not have purchased the product had she known she would later become "unexpectedly drowsy." Compl. ¶ 26. Though she claims she would have paid less for the product had she known of the alleged defect, she alleges no facts in support. *See id*. ¶ 4. Her GBL claims fail for this additional reason.

11

IV.     **Plaintiff has not plausibly alleged that the statement "non-drowsy" created an express warranty.**

In order to state a claim for breach of an express warranty under New York law, a plaintiff must plead (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *CBS Inc. v. Ziff–Davis Publ'g Co.*, 553 N.E.2d 997, 75 N.Y.2d 496, 502–04 (1990). The Plaintiff must also notify the seller of the alleged breach within a reasonable time. N.Y. U.C.C. Law § 2-607(3)(a); *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 (S.D.N.Y. 2020).

Here, for reasons similar to those above, Plaintiff has not plausibly alleged facts showing "Non-Drowsy" could constitute an express warranty or that Defendant breached any such warranty. Plaintiffs have failed to plausibly allege that the product "does not comport with the statements contained on the label...." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021). The term cannot reasonably be construed as a promise that the user will not become drowsy under any circumstances, and Plaintiff does not explain what other promise she believes the term was making that Topco breached. The claim also fails because Plaintiff's own complaint shows she did not give Topco reasonable notice of the alleged breach. She alleges only that she provided notice "by mailing a notice letter to Defendant's headquarters on February 8, 2022." Compl. ¶ 68. She filed suit just two days later. ECF 1. Even if Topco received the letter the day after it was mailed, this timing would have provided no opportunity to "make adjustments or replacements, opportunities to minimize the buyer's loss and reduce the seller's own liability," which is the point of New York's notice requirement. *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016). Because reasonable pre-suit notice was required, the express-warranty claim fails.

V.      **The Magnuson-Moss Warranty Act claim alleged here fails to meet the requisite standard for bringing such a claim.**

The MMWA does not create warranties; rather, it merely confers federal jurisdiction for state law breach of warranty claims. *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 999 (N.D. Ill. 2008); *Schimmer v. Jaguar Cars*, 384 F.3d 402, 405 (7th Cir. 2004) (MMWA

allows consumers to borrow state law causes of action and enforce written and implied warranties in federal court). Because Plaintiff's state law warranty claims should be dismissed, her MMWA claim should be dismissed. *See, e.g., Floyd v. Pepperidge Farm, Inc*., No. 21-CV-525-SPM, 2022 WL 203071, at *5 (S.D. Ill. Jan. 24, 2022) (dismissing MMWA claims because court dismissed underlying express and implied warranty claims).

The absence of a qualifying warranty further supports the dismissal of Plaintiff's MMWA claim. The MMWA defines "warranty" as a "written affirmation" that a consumer product will be "defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6). "Non-drowsy" is a product description rather than an affirmation that it will be defect free or meet a specified performance level. *See, e.g.*, *In re Sears, Roebuck & Co.,* No. 05 C 2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (dismissing MMWA claim because representation "Made in USA" on label was product description, not a warranty); *Elder v. Bimbo Bakeries USA, Inc*., No. 3:21-CV-637-DWD, 2022 WL 816631, at *4 (S.D. Ill. Mar. 17, 2022)(same regarding "All Butter Loaf Cake" label).

The MMWA claim also fails because it does not comply with 15 U.S.C. § 2310(d)(3). *See IWOI, LLC*, 581 F. Supp. at 999. No MMWA claim is cognizable in federal court if: (A) the amount in controversy of any individual claim is less than the sum or value of $25; (B) the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) the action is brought as a class action, and the number of named plaintiffs is less than one hundred. 15 U.S.C.A. § 2310(d)(3). Here, Plaintiff alleges she bought a single product, but does not allege what it cost. Compl. ¶ 26. She has, therefore, failed to meet her burden to show that the amount in controversy for any individual claim exceeds $25. 15 U.S.C.A. § 2310(d)(3)(A). The overall amount in controversy must also exceed $50,000 – another element Plaintiff cannot satisfy. 15 U.S.C.A. § 2310(d)(3)(B). Finally, Plaintiff is also the only named plaintiff, which is 99 fewer than the statute requires in order to bring a class action. 15 U.S.C.A. § 2310(d)(3)(C). Even if her state-law warranty claims were viable, her MMWA claim would still fail.

## VI.     Plaintiff cannot properly plead a claim for intentional misrepresentation.

Under New York law, an intentional misrepresentation cause of action requires "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages...." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). A strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir, 1994). The "motive must "entail concrete benefits that could be realized by one or more of the false statements alleged." *Id.* at 1130. (*See also, Chill v. General Electric Co.*, 101 F.3d 263, 268 (2d. Cir.1996) [a generalized motive to satisfy consumers' desires, increase sales and profits does not support a strong inference of fraudulent intent.]) As discussed above, Plaintiff has not pleaded facts supporting her claim that "Non-Drowsy" is a material misrepresentation nor has she plead fact supporting the intent needed to satisfy the pleading standard. Even if she had, the complaint includes no facts that would show Topco *knew* this was a material misrepresentation at the time of sale, especially given the FDA's findings regarding DXM and other antitussive ingredients and their potential for causing drowsiness.

## VII.     Plaintiff lacks standing to pursue injunctive relief.

A plaintiff seeking injunctive relief "must allege a 'real and immediate' threat" of future injury. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). The threat of future injury "must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lyons*, 461 U.S. at 102 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."). As the Seventh Circuit has held, where a plaintiff is now aware of the defendant's sales practices, "[s]he is not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741; *see also Grabowski v. Dunkin' Brands, Inc.*, 2017 WL 6059966, at *4 (N.D. Ill. Dec. 7, 2017).

A consumer who claims she was misled into buying a product in the past cannot show she is likely to suffer the same injury in the future, and so lacks standing to seek injunctive relief. *Scherr*, 703 F.3d at 1074; *Benson v. Fannie May Confections Brands, Inc.*, 2018 WL 1087639, at *5 (N.D. Ill. 2018) ("Most courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be deceived, they cannot meet the standing requirements for injunctive relief claims."). The complaint does not allege any facts explaining how Plaintiff could be injured by *not* buying products she would choose not to buy because she is concerned they may cause drowsiness, based on what she has already learned. She, therefore, lacks standing to pursue injunctive relief.

## <u>CONCLUSION</u>

The Court should grant Defendant's motion to dismiss because: (1) Plaintiff's claims are preempted; (2) she improperly asserts claims under the laws of states in which she does not reside; (3) her GBL claims fail because of the law's "safe harbor" and because she has not plausibly alleged that the phrase "non-drowsy" is false or misleading; (4) Plaintiff fails to properly plead a claim under the Magnuson-Moss Warranty Act; (5) Plaintiff failed to properly plead an intentional misrepresentation; and (6) she lacks standing to pursue injunctive relief.

Dated: April 18, 2022

Respectfully submitted,

**TOPCO ASSOCIATES, LLC**

By: _/s/ William F. Northrip_
    One of Its Attorneys

Michael W. Healy (*pro hac vice*)
Emily Weissenberger (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281
mfhealy@shb.com
eweissenberger@shb.com

William F. Northrip (#6315988)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
wnorthrip@shb.com

## **CERTIFICATE OF SERVICE**

I, William F. Northrip, an attorney, hereby certify that on **April 18, 2022**, I filed the foregoing with the Clerk of the Court using the court's CM/ECF system, which will serve electronic notice upon all parties of record:

Jonas Jacobson
Simon Franzini
DOVEL & LUNER LLP
201 Santa Monica Boulevard, Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7077
jonas@dovel.com
simon@dovel.com

Yeremey Krivoshey
Brittany S. Scott
BURSOR & FISHER, P.A.
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
ykrivoshey@bursor.com
bscott@bursor.com

*Counsel for Plaintiff*

 /s/  *William F. Northrip*